

KAUFF McGUIRE & MARGOLIS LLP

950 THIRD AVENUE · FOURTEENTH FLOOR
NEW YORK, NY 10022

MICHELE A. COYNE
DIRECT DIAL: (212) 909-0703
DIRECT FAX: (212) 909-3503
COYNE@KMM.COM

TELEPHONE (212) 644-1010
FAX (212) 644-1936

NEW YORK
LOS ANGELES
WWW.KMM.COM

September 1, 2017

**VIA ECF**

Honorable P. Kevin Castel
U.S. District Court, Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

      Re:    Ina Jackson v. Time Warner Cable Administration LLC
               16 Civ. 08639 (PKC)
               KM&M File No. 08318.8290

Dear Judge Castel:

      This firm represents defendant TWC Administration LLC (incorrectly named herein as "Time Warner Cable Administration LLC") ("TWC") in the above-referenced matter. In accordance with Your Honor's Rules of Practice, TWC submits this pre-motion letter in anticipation of (1) its motion for summary judgment pursuant to Fed. R. Civ. P. 56 and (2) its motion concerning spoliation sanctions pursuant to Fed. R. Civ. P. 37(e). The next conference is currently scheduled for September 8, 2017.

1. **Background of the Parties**

      TWC is a large, multiple service provider engaged in the business of offering cable television, digital telephone, and high-speed internet. Plaintiff Ina Jackson is a former TWC Service Technician. Plaintiff was terminated in August 2016 after instigating a loud and disruptive verbal confrontation with a co-worker. She alleges that her termination was discriminatory on the basis of her race (African American), in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), and on the basis of her race, age and gender under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

KM&M
KAUFF McGUIRE & MARGOLIS LLP

Honorable P. Kevin Castel
September 1, 2017
Page 2

2. **Legal and Factual Basis for the Anticipated Motion for Summary Judgment**

Summary judgment should be granted to TWC in this matter because there is no genuine dispute that Jackson was terminated due to her instigation of a verbal confrontation, in violation of TWC's policies, and her race, age and gender played no role in her termination.

During her employment with TWC, Jackson accumulated an extensive and well-documented disciplinary record. For example, Jackson received multiple warnings for excessive tardiness, exceeding her earned sick time leave, and engaging in unprofessional behavior in the workplace. On August 14, 2016, she engaged in a verbal confrontation with co-worker Dustin Roberts ("Roberts"), during which Jackson interrupted a conversation and exploded in anger after Roberts commented that she was being rude. She began yelling across the call center area at Roberts in an unprofessional tone and eventually stalked over to his workplace, where the two engaged in a disruptive cursing match. Multiple TWC personnel were required to step in and defuse the situation. In response to this altercation, TWC conducted a thorough investigation of the incident,[1] which included reviewing the surveillance video, speaking with Plaintiff and Roberts, and obtaining statements from several witnesses. The video and all of the other witnesses corroborated the fact that Plaintiff was the aggressor in the confrontation. As this incident was a clear violation of TWC's Workplace Violence Policy, and Plaintiff had received warnings before for this type of behavior, Plaintiff was terminated for a legitimate non-discriminatory reason, and her discrimination claims should be dismissed. *See, e.g., Byrne v. Telesector Res. Group, Inc.*, 339 Fed. App'x 13, 17 (2d Cir. 2009) (An "'employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory.'") (further citation omitted).

While Plaintiff claims that all of the witnesses were lying (Jackson Tr. 232), this conclusory assertion does not create a material question of fact given the clear video evidence of the confrontation and the fact that all of the other witness statements were consistent. Moreover, even if Plaintiff's contention were true, "[i]t is not for the Court to decide whether the [ ] complaints [against Plaintiff] were truthful or fair, as long as they were made in good faith." *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 36 (1st

---

[1] LaWanna Baker and Kia Henderson, who were both involved in the investigation and the termination decision, are, like Plaintiff, African-American women. As a matter of law, "[c]ourts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the [a]ffected employee." *Baguer v. Spanish Broad. Sys.*, No 04-cv-8393, 2010 U.S. Dist. LEXIS 69212, at *32 (S.D.N.Y. July 12, 2010), aff'd, 423 Fed. App'x 102 (2d Cir. 2011); *see also Drummond. v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (noting that a "well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class") (further citation omitted).

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Honorable P. Kevin Castel
September 1, 2017
Page 3

Dep't 2012) (citing *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010)) (further citation omitted). Even under the more lenient standard of the NYCHRL, "the mere fact that a plaintiff may disagree and think that her behavior was justified does not raise an inference of pretext." *Philip v. GTECH Corp.*, No 14-cv-9261, 2016 U.S. Dist. LEXIS 94777 (S.D.N.Y. Jul. 20, 2016) (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015)) (further citation omitted).

In addition, while Plaintiff attempts to rely on the bare facts that Roberts is a younger, non-African American male who was not terminated for his role in the confrontation, these differences, standing alone, cannot establish discrimination. Indeed, "conclusory allegations or unsubstantiated speculation" are insufficient to prove discrimination. See *Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 223 (S.D.N.Y. 2005) (citation omitted); see also *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("tissue-thin contention[s]" of "feelings and perceptions of being discriminated against are not evidence of discrimination") (citation omitted), cert. denied, 530 U.S. 1242 (2000).

In fact, Plaintiff has herself asserted another basis for her termination that is entirely unrelated to discrimination. In an interview with a Department of Labor representative in connection with her unemployment insurance application, Jackson stated that "the reason [she] was fired was because of retaliation" for previously filing a charge against TWC with the National Labor Relations Board, a theory she again asserted during her deposition (Jackson Tr. 18).

As Plaintiff cannot establish that her race, age or gender played any role in her termination, summary judgment should be granted for TWC on her Section 1981, NYSHRL and NYCHRL claims.

3. **Legal and Factual Basis for the Anticipated Motion for Spoliation Sanctions**

TWC is entitled to spoliation sanctions for Plaintiff's admitted and intentional destruction of evidence in this matter.

During discovery, TWC sought information and documentation relevant to Plaintiff's efforts to mitigate her alleged lost wage damages through interrogatory and document requests. Among such material explicitly requested was any documentation related to Plaintiff's efforts to seek employment after her termination from TWC. There can be no question that TWC is entitled to this information, as a plaintiff must make reasonable efforts to find comparable employment to reduce her alleged damages following the termination of her employment. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982). In response to these discovery requests, Plaintiff produced only (i)

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Honorable P. Kevin Castel
September 1, 2017
Page 4

information concerning her application for unemployment insurance benefits; and (ii) the date on which she became employed by her current employer and her current pay rate. Plainly missing from this production was any documentation or other information concerning any positions for which Plaintiff applied, any applications she submitted or any email or other correspondence with anyone concerning her alleged job search.

Though Plaintiff failed to produce any such documentation or information, she nevertheless testified during her deposition that she had, in fact, engaged in extensive job search efforts that yielded relevant documentation. By way of example, Plaintiff testified that she "signed up for ZipRecruiter, filled out applications with them…" and that she also signed up for approximately seven other online job search sites (Jackson Tr. 84, 87). She further testified that she received emails "basically every day" from ZipRecruiter identifying jobs that would be "great" for her and for which she could apply (Jackson Tr. 93), and that her ongoing correspondence with ZipRecruiter also included text messages (Jackson Tr. 93).

Despite these efforts, Plaintiff stated at her deposition that she does not have any documents relating to her job search, other than documents related to her current position, and that she did not save any of the correspondence that she had with ZipRecruiter (Jackson Tr. 87-88). Rather, Plaintiff admitted repeatedly that she deleted all such messages, including text messages (Jackson Tr. 90, 91-92, 94), and that any such electronic documents and information related to her job search cannot be recovered (Jackson 95-96). She further testified that she has continued to search for a higher paying job to present, but has continued to destroy electronic documents related to her job search (Jackson Tr. 282, 284).

While Plaintiff claimed during her deposition that she did not know she had to preserve job search records or other documents responsive to TWC's discovery requests (Jackson Tr. 92, 97), this does not excuse her destruction of evidence. *See Ottoson v. SMBC Leasing and Finance, Inc.*, 13 Civ. 1521, 2017 WL 2992726, at *7 (S.D.N.Y. July 13, 2017) (holding that the obligation to preserve evidence may also arise "when a party *should have known* that the evidence may be relevant to future litigation," and granting defendants' motion for spoliation sanctions for plaintiff's destruction of evidence, despite the claim that she was "unaware" of her obligation to maintain relevant evidence) (emphasis added). Moreover, it is clear that Plaintiff destroyed all of this relevant information after her duty to preserve it arose. *See Rutgerswerke AG & Frendo S.p.A. v. Abex Corp.*, 93 Civ. 2914, 2002 WL 1203836, at *13 (S.D.N.Y. June 4, 2002) ("The duty to preserve evidence arises even prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced.") (internal quotations omitted). Indeed, Plaintiff's counsel sent a demand letter to TWC just three weeks after Plaintiff's termination, and yet, Plaintiff proceeded to destroy evidence thereafter and has admittedly continued to do so to the present day.

**KM&M**
KAUFF McGUIRE & MARGOLIS LLP

Honorable P. Kevin Castel
September 1, 2017
Page 5

As a result of Plaintiff's intentional destruction of evidence, spoliation sanctions should be granted and TWC should thus be entitled to all available remedies under Fed. R. Civ. P. 37(e), in addition to any remedies the Court may fashion based on its inherent power to control litigation in imposing spoliation sanctions. *See Hsueh v. New York State Dep't of Fin. Servs.*, No. 15 CIV. 3401 (PAC), 2017 WL 1194706, at *4 (S.D.N.Y. Mar. 31, 2017).

4. **Proposed Schedule for the Motion**

We respectfully request that the Court set a briefing schedule for both of Defendant's anticipated motions at the parties' conference scheduled for September 8, 2017.

Thank you for your consideration.

Respectfully submitted,

*s/ Michele A. Coyne*
Michele A. Coyne

cc:   Albert Van-Lare